**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**MELANIE E. DAMIAN, as Receiver for the Receivership Estate of CONSUMER COLLECTION ADVOCATES, CORP.**

**Plaintiff,**

**v.**

**MITCHELL BERMAN,**

**Defendant.**

______________________________/

**Case No.:**

**Ancillary Proceeding Case No.: ______________**

## COMPLAINT

Plaintiff, Melanie E. Damian, in her capacity as the Court-appointed Receiver (the "Receiver" or the "Plaintiff") of the Receivership Estate of Consumer Collection Advocates Corp. (the "Receivership Estate" or "CCA"), files this Complaint alleging claims for unjust enrichment, fraudulent transfer, restitution/money had and received, and civil conspiracy against Mitchell Berman (the "Defendant") and alleges as follows:

## THE PARTIES

1. The Receiver was first appointed as Temporary Receiver by the United States District Court for the Southern District of Florida (the "District Court") pursuant to the Court's Order Granting Temporary Restraining Order, dated November 4, 2014, in the action styled *Federal Trade Commission v. Consumer Collection Advocates, Corp. and Michael Robert Ettus,* Case No. 14-CIV-62491-Bloom. The Receiver was appointed Permanent Receiver and her

duties and authority were further clarified in the Court's Stipulated Preliminary Injunction, entered November 17, 2014 (the "Receivership Order").

2. The Receivership Estate includes Consumer Collection Advocates Corp. ("CCA"), which is a Florida corporation with its principal place of business in Fort Lauderdale, Florida.

3. Defendant is and was a resident of Coconut Creeks, Florida, at all material times.

4. The Defendant acted as a salesperson for CCA and in this role received commissions from CCA in exchange for signing up customers for CCA's collection services, described below.

**JURISDICTION AND VENUE**

5. This action, which seeks to recover assets of the Receivership Estate, is related to the claims in the Receivership Action, over which this Court has original jurisdiction pursuant to Title 28, United States Code, Section 1331, in that this action forms "part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Therefore, this Court has subject matter jurisdiction over this action pursuant to the principles of ancillary or supplemental jurisdiction under Title 28, United States Code, Section 1367, and pursuant to Title 28, United States Code, Section 754.

6. This Court has personal jurisdiction over the Defendant as the Defendant is and was a resident of Boca Raton, Florida, at all material times, and the fraudulent transfers and transfers of funds occurred in this District. Personal jurisdiction is also proper pursuant to Title 28, United States Code, Sections 754 and 1692. The Receiver was appointed in this District; the instant Complaint is brought to accomplish the objectives of the Receivership Order; and the property sought by the Receiver is located in this District.

7. Venue is proper in the Southern District of Florida pursuant to Title 28 United States Code, Section 1391(b), because Defendant resides in this District and because a substantial part of the events giving rise to the claims occurred in this District.

8. Venue is also proper in the Southern District of Florida pursuant to Title 28, United States Code, Sections 754 and 1692, because this action is brought to accomplish the objectives of the Receivership Order and is thus ancillary to the Court's exclusive jurisdiction over the Receivership Estate.

9. The Receiver has standing to bring the instant action pursuant to the Receivership Order, which expressly authorizes the Receiver to "institute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal, or foreign courts that the Receiver deems necessary and advisable to preserve or recover the assets of the Receivership Defendant, or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order." Receivership Order at Section X ¶ L.

## GENERAL ALLEGATIONS

### *THE RECEIVERSHIP ACTION*

10. On November 3, 2014, the Federal Trade Commission ("FTC") filed a complaint pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act") (codified at 15 U.S.C. §§ 53(b) and 57b) and the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act") (codified at 15 U.S.C. §§ 6101-6108). Receivership Action ECF No. 1 (the "FTC Complaint"). The FTC Complaint sought to obtain permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief arising from CCA's telemarketing operations which were in violation of Section 5(a) of the FTC Act (15 U.S.C. § 45(a)) and in

violation of the FTC's Trade Regulation Rule entitled "Telemarketing Sales Rule," (16 C.P.R. Part 310). *See* FTC Complaint.

11. Specifically, the FTC Complaint alleges that the CCA Defendants "telemarket purported recovery services to consumers claiming that [the CCA] Defendants will collect the funds previously lost to telemarketing fraud, such as timeshare resale and precious metal investments. In order for [the CCA] Defendants to begin their services, consumers must pay a large up-front fee to [the CCA] Defendants. By charging an up-front fee, [the CCA] Defendants have violated the Telemarking Sales Rule ('TSR'), which specifically prohibits such advance payments. [The CCA] Defendants have further violated the TSR as well as Section 5 of the FTC Act by misrepresenting to consumers that [the CCA] Defendants' services will recover or are highly likely to recover a substantial portion of consumer's previous loss within six months." *Id.*

12. The FTC Complaint further alleges that "[i]n truth and fact, after paying the up-front fee, consumers typically recover none of their prior losses as a result of [the CCA] Defendants' services. Indeed, by purchasing [the CCA] Defendants' recovery services, consumers lose even more money to telemarking fraud. In the last year, [the CCA] Defendants have taken in close to $1.3 million from consumers, many of whom are elderly." FTC Complaint at ¶5.

13. On November 17, 2014, the FTC and the Receivership Defendants entered into a Stipulated Preliminary Injunction pursuant to which the Receivership Defendants were enjoined from misrepresenting, directly or indirectly, expressly or by implication, that, as a result of purchasing Defendants' services, consumers will recover, or are highly likely to recover, a substantial portion of the monies that the consumers previously lost to telemarketers typically within 30 to 180 days.

***DEFENDANT'S ROLE IN CCA'S FRAUDULENT ACTS AND THE TRANSFERS TO THE DEFENDANT***

14. In furtherance of the fraud, CCA utilized a sales staff to encourage consumers to sign up for its services.

15. The Defendant in the instant action was engaged as part of the CCA sales staff, and in that role, he convinced consumers to pay up-front fees in exchange for what were described as collections services. The Defendant was compensated, *inter alia,* by receiving commissions based on the upfront fees he was able to convince customers to pay to CCA and, if funds were collected, then again, based on the funds collected.

16. CCA typically did not recover funds for its customers, and, as such, the Defendant was aware of the fraudulent conduct occurring at CCA.

17. CCA made 74 transfers by check directly to the Defendant constituting payments of commissions (the "Transfers").

18. The Transfers originated from one or more of the CCA bank accounts.

19. The Transfers from CCA to the Defendant total $62,149.00 and are reflected in **Exhibit "A"** attached hereto and incorporated, by reference, herein.

20. The funds comprising the Transfers to the Defendant were funds that CCA fraudulently obtained from customers.

21. The transfers personally benefited the Defendant.

22. As a result of operating its fraudulent scheme, CCA was insolvent, undercapitalized, and operated at a loss.

23. Despite demand for the return of the funds by the Receiver on January 26, 2015, the funds have not been returned.

24. CCA, and thereby the Receivership Estate, has been damaged significantly as a direct and proximate result of the Transfers made to the Defendant as alleged above. Such damages include, but are not limited to, losses due to the dissipation of customer funds for which no reasonably equivalent value was provided in exchange for the Transfers.

25. Accordingly, the Receiver brings the instant action in order to collect monies that were improperly transferred, dissipated, misappropriated, or lost from CCA as a result of the fraudulent transfers to and unjust enrichment of the Defendant.

26. All conditions precedent to filing this Complaint have occurred, been satisfied and/or performed by the Plaintiff, or have been waived and/or otherwise been excused.

27. This action is brought within the pertinent statutory limitations period.

**COUNT 1**
**UNJUST ENRICHMENT**

28. Plaintiff repeats, re-alleges and incorporates by reference the allegations set forth in paragraphs 1-27 of this Complaint as if fully set forth herein.

29. CCA conferred a benefit on the Defendant when CCA transferred funds constituting property of CCA in the amount of $62,149.00 directly to the Defendant as payment for commissions.

30. The Defendant had knowledge of the benefit he received from CCA and voluntarily accepted and retained the benefit conferred.

31. It is inherently unfair and inequitable that the funds of consumers defrauded by CCA's fraudulent scheme are retained and used to personally benefit the Defendant, who assisted in the fraud, rather than being returned to the Receivership Estate for the benefit of all of the defrauded consumers.

32. As a direct and proximate result of the Defendant's retention of the $62,149.00 that CCA fraudulently transferred to the Defendant, the Receivership Estate has been diminished, and, under the circumstances, equity dictates that the Defendant return the funds that were received from CCA, and any assets acquired with those funds, to the Receiver for the benefit of all of the defrauded consumers.

**WHEREFORE**, the Plaintiff respectfully requests the Court enter a Judgment:

a. Declaring the Defendant unjustly enriched by virtue of receipt of the Transfers from CCA;

b. Requiring the return of the $62,149.00 to the Plaintiff; and, if necessary, imposing a constructive trust and/or equitable lien on the funds or other assets traceable to such transfers;

c. Awarding the Plaintiff damages, costs, and interest; and

d. Granting such other and further relief as may be just and proper.

**COUNT 2**
**RESTITUTION/MONEY HAD AND RECEIVED**

33. Plaintiff repeats and re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 27 of this Complaint as if fully set forth herein.

34. CCA conferred a benefit on the Defendant when it transferred funds constituting property of CCA in the amount of $62,149.00 directly to the Defendant as payment for commissions.

35. The Defendant received the benefit of the funds he received from CCA and voluntarily accepted and retained the benefit conferred to which the Defendant was not entitled.

36. Equity and good conscience dictate that the Defendant should return and repay the funds received and any assets he may have acquired with those funds to the Receiver for the benefit of all of the defrauded consumers.

**WHEREFORE**, the Plaintiff respectfully requests the Court enter a Judgment:

a. Entering a money judgment against the Defendant to make restitution to the Receivership Estate;

b. Requiring the return of the Transfers to the Plaintiff; and, if necessary, imposing a constructive trust and/or equitable lien on the funds or other assets traceable to such transfers;

c. Awarding the Plaintiff damages, costs, and interest; and

d. Granting such other and further relief as may be just and proper.

**COUNT 3**
**FRAUDULENT TRANSFER**
**Section 726.105(1)(a) Florida Statutes**

37. Plaintiff repeats and re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 27 of this Complaint as if fully set forth herein.

38. This is a claim to recover fraudulent transfers pursuant to Section 726.105(1)(a), Florida Statutes.

39. As detailed above, the CCA Defendants claimed that CCA engaged in public service campaigns to collect funds for consumers victimized by fraud or telemarketing scams. The CCA Defendants told consumers that for an upfront fee of approximately 20% of the amount consumers previously lost, CCA would begin recovery services to collect consumers' lost money.

40. The CCA Defendants represented that CCA was highly likely to recover a substantial portion of monies that consumers had lost. The CCA Defendants further claimed that they would typically be able to recover the lost funds within 30 to 180 days.

41. The CCA Defendants sent out prepared contracts, powers of attorney, and other documents to consumers and made repeated sales calls to pressure consumers to sign up for CCA services.

42. After paying up-front fees to CCA, consumers often never heard anything further from CCA. In numerous instances, consumers who paid the up-front fees to CCA did not recover any of the funds that they lost in previous telemarketing transactions.

43. As detailed above, CCA transferred $62,149.00 to the Defendant while CCA was defrauding consumers.

44. CCA made the $62,149.00 in transfers to the Defendant without receiving a reasonably equivalent value in exchange for the Transfers.

45. At the time that CCA made the Transfers, CCA was operating a fraudulent scheme, was insolvent, and was engaged in a business or transactions for which its remaining assets were unreasonably small in relation to the business or transactions.

46. When CCA made the Transfers to the Defendant, CCA intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay for them as they became due.

47. Thus, the Transfers were inherently fraudulent pursuant to Section 726.105(1)(a), Florida Statutes.

**WHEREFORE**, the Plaintiff respectfully requests the Court enter a Judgment:

a. Determining that the Transfers from CCA to the Defendant were fraudulent;

b. Requiring the return of the Transfers to the Plaintiff; and, if necessary, imposing a constructive trust and/or equitable lien on the funds or other assets traceable to such transfers;

c. Awarding the Plaintiff damages, costs, and interest; and

d. Granting such other and further relief as may be just and proper.

**COUNT 4**
**FRAUDULENT TRANSFER**
**Section 726.105(1)(b) Florida Statutes**

48. Plaintiff repeats and re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 27 of this Complaint as if fully set forth herein.

49. This is a claim to recover a fraudulent transfer pursuant to Section 726.105(1)(b), Florida Statutes.

50. As detailed above, CCA transferred $62,149.00 to the Defendant.

51. CCA made the $62,149.00 in transfers to the Defendant without receiving a reasonably equivalent value in exchange for the Transfers.

52. At the time that CCA made the Transfers, CCA was operating a fraudulent scheme, was insolvent, and was engaged in a business or transactions for which its remaining assets were unreasonably small in relation to the business or transactions.

53. CCA believed, or reasonably should have believed that it would incur debts beyond its ability to pay as they became due.

54. When CCA made the Transfers to the Defendant, CCA intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay for them as they became due.

55. Thus, the Transfers were inherently fraudulent pursuant to Section 726.105(1)(b), Florida Statutes.

**WHEREFORE**, the Plaintiff respectfully requests the Court enter a Judgment:

a. Determining that the Transfers from CCA to the Defendant were fraudulent;

b. Requiring the return of the Transfers to the Plaintiff; and, if necessary, imposing a constructive trust and/or equitable lien on the funds or other assets traceable to such transfers;

c. Awarding the Plaintiff damages, costs, and interest; and

d. Granting such other and further relief as may be just and proper.

**COUNT 5**
**CIVIL CONSPIRACY**

56. Plaintiff repeats and re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 27 of this Complaint as if fully set forth herein.

57. There was an agreement between CCA, through Receivership Defendant Michael Ettus, and the Defendant to do an unlawful act. That is, the Defendant agreed to convince consumers to pay up-front fees in exchange for services that CCA did not perform.

58. There was an overt act in furtherance of the agreement between the Defendant and CCA as the Defendant convinced consumers to pay up-front fees in furtherance of CCA's fraud.

59. The Receivership Estate was damaged as a result of CCA's and the Defendant's acts as the funds transferred to the Defendant should instead be used for the benefit of CCA's defrauded customers.

**WHEREFORE**, the Plaintiff respectfully requests the Court enter a Judgment:

a. Declaring the Defendant conspired with CCA and Michael Ettus to defraud customers;

b. Requiring the return of the $62,149.00 to the Plaintiff; and, if necessary, imposing a constructive trust and/or equitable lien on the funds or other assets traceable to such transfers;

c. Awarding the Plaintiff damages, costs, and interest; and

d. Granting such other and further relief as may be just and proper.

Respectfully submitted this 9th day of July, 2015.

By: /s/ Melissa Visconti
MELISSA VISCONTI, ESQ.
Florida Bar No. 0068063
Email: mvisconti@dvllp.com
MELANIE SPENCER, ESQ.
Florida Bar No. 111786
Email: mspencer@dvllp.com

DAMIAN & VALORI LLP
*Counsel for the Receiver*
1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
Telephone: 305-371-3960
Facsimile: 305-371-3965